Next case is number 2010-1020, CROWN PACKAGING Technology and Crown Corp Concealed against Ball Metal Beverage Container Corporation. Mr. Heist. Will you please record? I'd like to reserve five minutes for rebuttal. Got it. This is a can-end. They look so simple. They're not genetically engineered and there are no microprocessors, but in the industry in which my client operates, they've been very, very significant, the invention of this patent. But despite the simplicity of the invention, the briefs make it very complicated. Your Honor, these can-ends, when this record was closed about two years ago for this motion, there had been $250 billion of these ends sold by our client. Let me ask a question about anticipation, okay? Sure. With respect to the Toyo references, I understand that Toyo Claim 2 shows the angle before seeming, right? And you seem on page 51 of your brief not to dispute that. Am I correct about that? It describes the end before it's seeming. However, it has some issues about the translation, but yes, it does describe the unseen end. Okay. So, and then Figure 4, and perhaps Figure 3 also, shows the configuration after seeming, right? That's correct. So, why wasn't the district court correct in concluding that the 10-degree limitation, which the court found in the claims, was satisfied by the change in the configuration from the pre-seem situation described in Claim 2 and the seem situation described in Figure 4? There are two reasons, Your Honor. First of all, that reference and that translation of the reference were for the examiner in both patents. The examiner found the claim not anticipated over that particular reference and explained why. In addition, our expert, Mr. Hyam, explained why the end that Ball pointed to in Figure 2, if it in fact, in Claim 2, couldn't have been seemed as shown in Figure 4. It's not possible. Well, he doesn't really specifically address Claim 2, does he? He doesn't make specific reference to it, right? But what he testified to, or what he had in his expert report, explained why it couldn't work that way. And if I may explain, the can end, if it starts like this, and this is the anti-peaking bead, and this is the wall of the can, if you bend upwardly during seeming, the claim requires that the end be adapted to be bent upwardly during seeming, in the case of the product claim, or be actually bent upwardly in the method claim. And if you assume that this part is fixed, and this point is also fixed, for the can to bend upwardly, the can end to bend upwardly, the can must move in. It must come and meet the can end. That's not immediately apparent to me, and the trouble is, Higgum, or however you pronounce his name, doesn't explain why that's true. It's true because the metal can't stretch, and so for it, in the shortest distance between two points is a straight line, and so if you're going to change this, the can needs to move in. And in the patent, in our patent, the can is necked, and when the can is necked, it can move in to meet the can end. I don't know, in your right hand, if the angle, if you assume it's immobile, but if it moves, this can easily happen. It can't move. It can't move because it has to be fixed on both sides of the can, and so it's locked in the center of the can, and the seam has to stay. That doesn't mean that it can't move down, that the angle can't change and move down so that it becomes flat against the can of wool. It can move down and stay flat against the can of wool, but only if the can moves in to match it, because the seam has to go, has to be formed, and that's why Mr. Hyam's opinion was that it was not possible for a can end, such as arguably as described in Claim 2 of Toyo, could not be seamed to form the seamed can end shown in Figure 4. So Mr. Scranton, their expert, testified that it was possible that there were embodiments of Toyo that started vertical. In other words, in the pre-seamed condition, it was vertical, so when the seaming occurs, the can doesn't have to move in. It can seam like so. There are only two embodiments shown in Toyo, right? Figures 3 and 4. Figures 1 and 2 are the prior art. I think that's right. There's one aerosol can and one beverage can. So what we have here is one expert saying the reference can't have worked that way. The other expert saying it could have worked a different way, but anticipation, which is what we're talking about here, an inherent anticipation, the burden is on the plaintiff to show that it necessarily operates in a particular way, and the evidence is conflicting on that very point. Now, getting back to where I started, 250 billion of these ends were sold two years ago. What's that have to do with anticipation? Well, on anticipation, you're correct, but I would submit to you that where there's conflicting evidence, and there was conflicting evidence on that point, the district court erred in granting summary judgment. Crown was entitled to its day in court on the question of whether Toyo anticipated. And frankly, if we had called no expert, the file wrapper alone should have given rise to evidence of no anticipation. There was nothing submitted here that the Patent Office didn't have. So they've already reviewed, the Patent Office already reviewed this twice and concluded that there was no anticipation because it found that Toyo did not bend upwardly while keeping the lower part of the cannon at an angle. But Judge Dyke's point that you sold however many you've sold, is it relevant to the considerations we're making? Well, I think they're relevant to the written description issue and they're relevant to the obviousness issue, which is raised. I agree. The obviousness really isn't raised. It was not decided below. But the metal savings are relevant to the written description argument because the patent is really directed to metal savings. 250 billion ends saved compared to the standard end, 62,000 tons of aluminum. 62,000 tons is enough to fill 25,000 2.5 ton trucks. It's enough to make a line of trucks 100 miles long. What does that have to do with written description? This patent has to do, the main problem to which it's addressed is metal savings. Right. And metal savings is described in the specification. It's one of the two problems to which the patent is addressed. The other problem being the subsidiary problem, there are various ways the patent teaches to obtain metal savings. One is to change the angle of the wall. I understand that and I understand your argument and I'm not saying I disagree with it. I just am troubled by the fact that you're arguing that the number of sales of that product has anything to do with the answer to the question of whether the written description is adequate. The question of whether the written description is adequate turns on what are the problems to which the patent is directed. In this case, there were two. One of them is metal savings. The specification describes that. The claims are directed to metal savings, some of them. Others are directed to the secondary problem of scuffing. Those claims are dependent. Dependent claim 62, for example, in the method patent, depends from claim 50, which is asserted. So there are claims directed to both aspects, both problems to which the patent is directed. Those aren't separate problems. If we consider them to be a single problem, then you lose on written description, right? I'm sorry, Your Honor. If we consider that those two problems are really part of one problem, that it's a single invention, then you lose on written description, correct? I don't think so, Your Honor. Why not? Because in Revolution Eyewear, there were problems that were related one to another, and the Court still looked at them as separate problems and said you can have claims that are directed to the solution of one and separate claims directed to the solution of the second, and there's no requirement that all claims be directed to the solution of both, even though related. But if they're separate problems, but if it's considered to be part of a single problem, two aspects of a single problem, then you're wrong on written description, right? Your Honor, I don't think so with all due respect because I think that was the situation in Revolution Eyewear where there were two problems and they were, or there were two problems that were related one to another, and that's what we have here. Now, the District Court, in its written description analysis, relied on Tronzo, ICU Medical, and Lizard Tech, and I submit to you that all three of those cases are distinguishable. The case that the District Court should have relied upon here is Revolution Eyewear, also Cooper Cameron. The entirety of this specification does not suggest that the only thing it's directed to is scuffing and chuck breakage. The entirety of this specification shows it's directed to both. So Cooper Cameron should have controlled and Revolution Eyewear should have controlled. Why do you concede that the problems are related in this case? They're really separate problems. The metal savings occurs from changing the wall angle, moving the bead inwardly, but the patent says the metal savings can also be obtained by making the bead a little narrower. Why did you just a minute ago acknowledge that they were related when it seems to me there's an argument that they're not? Well, there is an argument that they're not. They're related in this sense. If one wishes to obtain metal savings by both increasing the wall angle and narrowing the width of the reinforcing bead, the secondary problem arises, and that is the possibility of breaking the chuck and scuffing. The patent is directed to that and the claims are directed to that. This is not a broad genus claim where the result is claimed functionally, which is what we have in many of the written description cases that this Court has decided. Nor is it a situation like we had in ICU where there are nine embodiments, all of them requiring spikes. So you read the specification and you think there's only one invention here, and then you go to the claim and you find that there's a different claim. In this case, the broad claims directed to the end and the method were found in the original as-filed application. And I can give you the site to that. And those claims did not preclude driving the bead. So this isn't a case where the claim started out narrow and was broadened during prosecution to encompass something new. It never required that driving the bead be excluded in the broadest claims from the beginning. So this is very much unlike the other written description cases. You have to win on both written description and anticipation to get a reversal, right?  Now, on anticipation, the superficial look at Toyo is a difficulty that I need to address. When you look at Claim 2, Claim 2 says, gee, here's this wall, and if you ignore the typographical error in Claim 2 of Toyo, you come up with this view of what the unseen can look like. But if you read that claim and take the typographical error into account, you can read that claim as defining the unseen end such that the upper part of the K&N wall was vertical in the pre-seen condition. And that's what our expert said is the only way that Toyo could be seen. The other way is impossible, according to him. Their expert says otherwise. That's a fact issue. Let me ask you a question. This is a very odd situation here with respect to the claim construction. If I understand, if the district court had adopted the claim construction you urged here, there wouldn't be a 10-degree limitation, and Toyo would anticipate, wouldn't it? I'm not sure which claim construction you're referring to. The district court's included as part of this claim construction finding, as I understand it, in the prosecution history that the upper part of the K&N wall had to deflect by more than 10 degrees, correct? That's right. And you argued the opposite. You said there was no such limitation in the claim, right? That's right. So my question is if the district court had adopted your claim construction, there clearly would be anticipation, right? Well, I think there are some reasons why there's no anticipation quite apart from that. For example, claim— But on the point we're talking about now— On that point, but I think there are some other reasons why— On that point, there would be no problem with finding anticipation if you'd adopted your claim construction. If it didn't require any degree of upward bending, or even if it didn't require a degree of upward bending, if it required some upward bending, our expert's view is Toyo could not have applied upward bending during the seaming process because of the fact that he started with a straight wall, non-necked can. So I don't know if that answers your question. You mean that no amount of upward bending? Right. His view was that you can't bend upwardly in Toyo because the can wall cannot come in to meet the— Pardon me. The wall of the can cannot come in to meet the wall of the can end during the seaming process because it can't deflect. And so Toyo must have used an end that was already in its upward position at the top, in its precinct condition. There's no other way it could have happened, according to our expert. Now, of course, there's a disagreement about that, but that's the disagreement the jury needs to resolve. Okay. Let's hear from the other side. We'll save you rebuttal time, Mr. Hirst. Mr. Lucan. May it please the Court, John Lucan from Dinsmore & Scholl for Appelli Ball. While this case is a bit complicated, and I suspect the briefs made it more complicated than perhaps it needed to be, at core— Yeah, I would agree with that. Sometimes we can't help ourselves, Your Honor. At core, this is a Rule 56 case. This is a simple case of a complete failure of proof offered by the non-moving party to overcome— I don't address this point about anticipating whether Higgins agrees a genuine issue of material facts. He most certainly does not, Your Honor. As Your Honor correctly noted, and as Mr. Heist conceded, although then tried to take back, Claim 2 teaches an unseen can-end. And the configuration is the unseen can-end of the invention of the patents in suit. He seems not to dispute that, but he says that you can't have the deflection without a next can, and he cites his expert's testimony. His expert, to raise an issue as to whether the unseen can-end of Claim 2 could or could not be seen into the seen can-end of Figure 4, one must utter the words, Claim 2. One must acknowledge that Claim 2 teaches an unseen can-end. Mr. Higham never does that. Before the Patent Office— No, no, no. He said in his argument, he acknowledged that. He says we can assume that Claim 2 shows an unseen can-end. But he's saying that you can't have the deflection of this top part of the can-end without necking the can during the seeming process. Mr. Higham starts with the finished product and the particular illustration of the finished product in Figure 4 and looks backward instead of following the sequence through. Mr. Higham's opinion, by ignoring Claim 2, doesn't take issue with the seamed end of Figure 4, which is the upper part of Figure 4. It's the part where the end interacts with the top of the can, the can flange. That seamed end is most definitely what Claim 2 looks like when it's seen. Mr. Higham then drops to the rest of Figure 4 and looks at the part of the can that's not part of the seam and says, in that configuration, I think it started like this, not like this. The trouble with that, looking back from Figure 4— He's saying that the can-end, as you tried to represent with your right arm, can't move. It has to be fixed. If it's fixed against the can wall, then you can't have the deflection that we're talking about without necking. Am I correct? That's his argument. That is Mr. Heist's argument. Mr. Higham falls short on that because what Mr. Scranton relies upon is not the shape of the part of the can. Only part of the can ends up in the double seam. The can has the base part and it has the flange, which is rolled into the double seam. Mr. Scranton follows Claim 2 through seaming to the finished double seam. The interaction of the flange of the can, the part of the can that becomes part of the double seam, and of the can-end, which becomes part of the seam. There's no question that Scranton says this can be done and it's anticipated, and you've got evidence in the record that it's anticipated. Fine. I don't think they dispute that. The question is whether the Higham affidavit creates a genuine issue of material fact, and why doesn't it? Your Honor, because, as Mr. Scranton recognized and Mr. Higham didn't, JP 323 teaches in an unseen condition a variety of shapes of can ends, all the way up from Mr. Higham's, which would be under Claim 1, down to Mr. Scranton's focus on Claim 2. Depending upon which of those one claimed, the can below the seam could be affected, but the seam is the same. I don't understand what you're saying. It's clear that Toyo doesn't show a necked can, right? The illustration in Figure 4 is an unnecked can, yes, Your Honor. It is Higham correct that you have to neck the can to get the deflection that we're talking about? Your Honor, I don't think Mr. Higham makes that clear for the record because he doesn't address the specific end. Moreover, Mr. Higham was well aware when he told the Patent Office, contradicting what they're now relying upon, the testimony of the Patent Office that Mr. Heiss is referring to is where Mr. Higham said, I can't tell what this thing looked like before seaming, but he specifically called out the necking. The shape of the can is not material in Figure 4. The portion of the can that's not part of the double seam is not material in Figure 4. That's not the element that's at issue here. The element that is at issue here is the can end and the flange of the can. I don't understand what you're talking about. I'm sorry. He says you can't deflect the top of the can end unless you have necking. Is he right about that? Is he wrong about that? Scranton doesn't seem to address that question. Mr. Scranton follows the unseamed end of 2 into the seamed end of Figure 4. I understand. Not the rest of Figure 4. Not the balance of the can. Because Figure 4 depicts a seamed end and there are a variety of unseamed ends that precede it, the can configuration does not cover all of the seamed ends that Toyo teaches. Mr. Heim speculates on a version of the unseamed end that would be consistent with Claim 1 but not Claim 2. That one requires no necking. Mr. Heist speculates that to use Claim 4 you would have to have necking. Mr. Heim doesn't go that far. Figure 4 or Claim 2? Claim 2. Thank you, Judge. Even if Mr. Heist is right and Mr. Heim had gone all the way to address Claim 2, the portion of the can in Figure 4 that's below the seam isn't what Mr. Scranton is relying upon. A finished double seam is a finished double seam. It's a fairly standard thing in this business. All of those truckloads of ends that Mr. Heist talked about have a finished double seam. The can below it may be wide, it may be narrow, it may be red, it may be blue, but the finished double seam is the finished double seam. Mr. Scranton starts with the unseamed end of Claim 2 and says, when seamed, anyone skilled in the art knows that the double seam, the interaction of the flange of the can and the can end, looks exactly like Figure 4. But this is summary judgment, and you're telling us that we need to make the findings and respect the findings and the position of movement, but the rules are just contrary, aren't they? You have to be entitled to summary judgment on their theory of the facts, not on your theory of the facts. Yes, Your Honor, but he doesn't meet our theory of the facts. There are two different configurations before seaming. Mr. Heist wants to take Mr. Haim is to say that the entire package in Figure 4, including the irrelevant part of the can, the illustrative bottom part of the can, would be next. So that doesn't count. Mr. Haim doesn't close that gap. Mr. Scranton, the part of the can that Mr. Haim is pointing at in his very limited opinion is not the part of Figure 4 that Mr. Scranton, our expert, relies upon. The issue here isn't what goes on in the can. The issue here is what goes on in the double seam. The seam, the finished seam, looks the same. If you start with one version, with Claim 1, Mr. Haim's version, you end up with a can that looks one way on the irrelevant part. But if you start with Mr. Scranton's, you might look a different way on the irrelevant part. But the key is the double seam. This is a case about what the double seam looks like, not what the can looks like. And it's undisputed, Mr. Scranton says, if you start with Claim 2 and you seam, the seam, not the can, the seam is what's shown. So the fact that the applicant... What the problem is here is that if you compare the pre-seam can in Claim 2 with the final can in Figure 4, it's clear that the deflection is taking place. That's what you're saying. But as I understand, Haim is saying, well, that can't be happening because the can hasn't been necked, and without necking, you can't go from Point A, that is, Claim 2, to Point B, which is Figure 4. That's what I understand. I think Mr. Haim's real... Have I said something that's wrong? I think their dispute is less with the ten degrees of bending than it is what the chuck looks like. Their argument has always been that you can't... They've given up on the chuck. They don't even argue that. It's clear. Everybody knows you have to use chucks. And they don't even, in the reply brief, address the chuck question. Stick with what they are arguing. And what they're saying is that, you know, if you go from Claim 2 to Figure 4, it's not possible because there's no necking. And, you know, maybe that's right. Maybe that's wrong. But it's not addressed, and there seems to be a fact dispute about it. Your Honor, I'll take another crack at it. Mr. Scranton does not rely upon the shape of the can in Figure 4 as being part of the after. Mr. Scranton, to find... I understand he doesn't. But they are saying he can't be right, that it's possible to go from Claim 2 to Figure 4 because there's no necking shown here. You can go from Claim 2 to the seamed end in Figure 4. And the seamed end is all that's material. Because this patent doesn't say anything. There are no elements in any of the asserted claims about the shape of the can and about whether there's necking or not. So the fact that the can that's illustrated in Figure 4 happens to have necking, and therefore Mr. Heiss says that matches up with Mr. Scranton's version rather than Claim 2, doesn't read Claim 2 out of what JP 323 teaches. Mr. Scranton says, I have the unseamed end, and I have the seamed end. And the seamed end that's in Figure 4 is what you get if you seam the unseamed end. And whether or not the rest of the can would be the same is irrelevant because Mr. Scranton's not relying upon the rest of the can. He doesn't have to match the elements that are in play. If there were limitations about necking here, then the effort to take Mr. Haim from not meeting Scranton's arguments into a dispute might have some merit. But Mr. Scranton does not need the shape of the can. All he needs is that there's a finished end. And Mr. Haim disputes that if you did what Mr. Scranton says, the can in Figure 4 might be different. But the can is not an element of the claim. You should take some time to work on written description. Your Honor, on written description, there is also a complete failure of proof. This is not a Revolution Eyewear case. This is a Tronzo ICU medical lizard tech power oasis case. Those cases all involved a situation where there was a real tie-in, was there not, between the two features and the description? And whereas here, aren't they separate or at least separable? Your Honor, I think I want to separate two issues. The one is whether this hypothetical second problem about scuffing gets crowned out of their situation. And the first, the threshold issue, is take the claim that they have and ask the question that's asked in ICU in Tronzo and Lizard Tech in that whole series of cases. They have shown that they are in possession of a very specific way of seaming and a very specific end and chuck. It is one in which they consistently refer to the lower wall of the chuck, which drives and matches the angle of the can end wall. They call 32 the lower angle of the chuck, the drive surface the frustoconical drive surface. They emphasize repeatedly that the reason that you can seam this, the reason this end is even patentable with its large can end wall is because you can't seam it with a normal chuck, which presses in the bottom, drives in the bottom, and simply presses a little on the side. This has an angle that's way too big to be able to do that. You have to drive. The juncture of the two chuck walls is an edge. You have to drive into that, so you have to drive. So it is exactly like those cases where the only thing that is taught, the only thing that they're in possession of, is a chuck and a method of seaming in which you drive on the wall of the can end, not in the reinforcing bead. So when we get to whatever they do or don't do about scuffing, if you follow the invention, the only invention they teach, the spikeless needle or the needle with spikes, the cup that is conical in the other cases, you necessarily solve the second problem. It's not that the two problems are related. It's that the first problem, the metal saving problem, the only invention that they're in possession of, forces you to drive on the wall, not anywhere else, and they say that repeatedly. They call it a drive service. If you're doing that, a collateral benefit of that is to also avoid any scuffing because by definition you're not in the bead. But unlike Revolution Eyewear, where we solved the problem at first base by fixing first base, and we solved the problem on the pitcher's mound by fixing the pitcher's mound. In this invention, we have a way of saving metal on the pitcher's mound, and by the way, if you implement that way, you get the collateral benefit of not scuffing because you inherently must drive on the can end wall. You're saying you can't do the gold metal saving aspect of the invention without also dealing with the seam? Yes, Your Honor. Like those cases, that series of cases that we're relying upon, use a Venn diagram, they teach an invention in which you seam on the can end wall because you have to pinch that large angled can end wall with the juncture of the two chuck walls to get it to bend because it's so large. It's not like a simple prior art one where you bend it a little. That's the only thing they teach, and like those cases, they're now claiming a generic way of seaming, including a lot of things that they don't teach, that isn't disclosed in the specification. That's why there's a lack of support for this method of seaming that doesn't seam a prior art can end wall. It seams this large angled can end wall, and they say if you try to seam that conventionally, which is driving down the reinforcing bead, which is a normal looking chuck, you end up with a wrinkled mess at the top, not a finished double seam. What they do is instead of driving in the bottom and gently pressing in on the side, and this gets to the ten degrees of bending, they have to go beyond that because they start with such a large can end angle, and the way they do it is you don't drive down here and gently press in and get wrinkling. You drive right on the wall, and the edge of those two walls of the chuck, the bottom one that's called the frustoconical drive surface, and the top one that you press in on, it's that edge form between there that gives additional driving, and you will look in vain for any description of seaming anywhere in the specification, in the invention, other than on the can end wall. So to get their metal savings, you have to be able to seam this large angled can end wall. According to the specification and the file history, to do that, you have to drive up here. If you're driving up here... Thank you, Judge. Does that answer your question more or less? Okay. Thank you, Mr. Lucan. Mr. Heist. Your Honor, very briefly on anticipation, all we need to do is compare Mr. Scranton's opinion that the wall in Toyo was bent upwardly, that's JA 59-12, with Mr. Higham's contrary opinion that it couldn't have been bent upwardly at JA 309. What's wrong with his last argument on written description? His argument on written description, you mean as to where the drive occurs in the patent? Right. Why do you... He's saying if you do one, you have to do the other. What he says is the patent teaches driving on the crustal conical wall. That's true. But the patent doesn't say that you may not also drive in the bead. What they want is a negative limitation in all these claims. There's a negative limitation in claim 60, dependent claim 62, that says don't drive in the bottom of the bead. What I'm understanding him to say, and maybe I'm misunderstanding it, is that you cannot close the wide angle by driving in the bead. Only in the bead, I would think that might be correct. But that's not what we have here. There has to be some bending around the chuck during the seaming process, and the claim requires that. But the claim doesn't preclude also driving in the bead. What they want to do is add a limitation in the claim that's not there, that says you must drive here, but not here. And there's no particular reason why you can't drive in both locations. That may be true, but the question is whether the invention contemplates driving on the wall and not in the bead. That seems to be what the invention is. There's no showing in the specification of an embodiment that drives both on the wall and in the bead, right? There's no showing of having those two together, but the inventors were in possession, in fact the whole industry was in possession of driving at the bottom of the bead. That's the way it was always done. This isn't something new. Would that work with the wider angle? Driving in the bead and at the chuck wall juncture, that would work. I don't know. Nobody does that. I don't know whether that would work or not. If you have the wide angle, your patent teaches you don't drive in the bead because if you tried to do that, it would work. Now, if you tried to drive in the bead... Right. If you drive in the bead and the bead is too narrow, you may break the chuck or you may have scuffing, but the patent doesn't say if you drive in the bead and you drive outside the bead, that it's not going to work. If you want to have a narrow bead, it tells you don't drive in the base of the bead because you might get scuffing and you might break the chuck. But turning to the metal-saving aspects of the invention, the important thing, and the examiner saw it in his reasons for allowance, was bending upwardly during seaming while keeping the lower part of the chuck wall at the angle that it started at. That's why he found the claim was not anticipated over TOIA. That's at JA6131 and JA6853. Those are the examiner's reasons for allowance. He didn't say the claims were patentable because we avoided driving in the bead. At least not... That wasn't the only reason that he found the claims patentable, and it's very clear. Could you have your metal-saving invention and then drive in the bead and have it work? I don't think so, but I don't know... I can't really answer that question because nobody does that. The metal savings comes from changing the wall angle and possibly also narrowing the width of the bead. But you have the wide wall angle. Right. Don't you have to drive outside the bead to close the angle? You do, but you can simultaneously also drive inside the bead. That's a choice that you can make. And the claims don't preclude that. The reasons for allowance don't preclude that. There's no particular reason why these claims should have been held invalid because they didn't have that negative limitation because that's not required to save metal. Thank you, Your Honor. Thank you. Okay. Thank you, Mr. Hyacinth. This is taken under submission.